# ERVIEN, COMMISSIONER OF PUBLIC LANDS OF THE STATE OF NEW MEXICO, *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 72. Submitted November 11, 1919.—Decided December 8, 1919.

The Enabling Act of June 20, 1910, § 10, c. 310, 36 Stat. 557, provides that the public lands granted and confirmed to the State of New Mexico, their natural products and money proceeds, shall be held in trust for the several objects for which the lands were granted or confirmed, and that any disposition of such lands, money, etc., for other objects shall be deemed a breach of trust; and the Attorney General of the United States is required to prosecute in the name of the United States proceedings necessary to enforce the provisions of the act relative to the application and disposition of the said lands, the products thereof, and the funds derived therefrom. In such a suit, *held*, that the use of such funds for advertising the resources and advantages of the State generally would be a breach of the trust and that the state land commissioner should be enjoined from so using them under authority of an act of the state legislature. P. 47.

246 Fed. Rep. 277, affirmed.

THE case is stated in the opinion.

*Mr. A. B. Renehan* and *Mr. Carl H. Gilbert* for appellant:

The District Court was without jurisdiction. The State of New Mexico was the real party in interest, and the suit could only have been maintained as an original proceeding in this court. Jud. Code, § 238; *Louisiana v. Jumel,* 107 U. S. 711, 727; *Smith v. Reeves,* 178 U. S. 436, 439; *In re Ayers,* 123 U. S. 443, 502; *New York Guaranty Co. v. Steele,* 134 U. S. 230, 232; *Governor of Georgia v.*

*Madrazo*, 1 Pet. 110; *Cunningham* v. *Macon & Brunswick R. R. Co.*, 109 U. S. 446; *Antoni* v. *Greenhow*, 107 U. S. 769; *Minnesota* v. *Hitchcock*, 185 U. S. 373.

The appellant, as land commissioner, did not threaten to expend the full three per cent. of the income, but only so much of it as should seem expedient and desirable, in advertising the resources and advantages of the State generally, and particularly to homestead seekers and investors. This would not constitute a breach of the trust, but only a legitimate expense in the administration of the trust estate, resulting in an increased demand for the lands, which would increase rather than diminish the proceeds to be distributed to the beneficiaries. No provision was made in the trust agreement for the payment of expenses incident to proper administration. The proposed expenditure is not unreasonable and the right to make it is implied. Perry on Trusts, § 910; *Trustees* v. *Greenough*, 105 U. S. 527; *Meddaugh* v. *Wilson*, 151 U. S. 333; *Worrall* v. *Harford*, 8 Vesey, 8; *Attorney General* v. *Mayor of Norwich*, 2 M. & C. 406, 424; *Rex* v. *Inhabitants of Essex*, 4 Term Rep. 591; *Rex* v. *Commissioners of Sewers*, 1 B. & Ad. 232; *Crump* v. *Baker*, 18 Vesey, 285; Hill on Trustees, c. 5, p. 570.

The advertisement required by § 10 of the Enabling Act has only to do with the manner of conducting a sale or lease. This must be by public auction, of which there shall be at least the published notice required. There is nothing to prohibit a greater notoriety in exposition of the advantages of the lands.

The act looks to the production of funds for the particular objects stated, but it has in mind also the aggrandizement and enrichment of the new State, whose people are the real beneficiaries; and this enrichment and aggrandizement must come through homeseekers, settlers and investors. To attract these was the particular purpose of the state statute. The general advertisement

of the State was purely incidental; and both sorts of publicity tended to the same end—more competition for the lands.

It is the duty of a trustee in selling to sell under the best possible conditions. *Downes* v. *Grazebrook,* 3 Mer. 208; *Wilkins* v. *Fry,* 1 Mer. 268; 2 Rose, 375; *Ord* v. *Noel,* 5 Madd. 440; *Mortlock* v. *Buller,* 10 Vesey, 309. Trustees should proceed according to good business. *Phelps* v. *Harris,* 101 U. S. 370, 383; 2 Perry on Trusts, § 770.

Administration of the trust should not be interfered with by injunction unless a gross abuse of discretion be shown. *Nichols* v. *Eaton,* 91 U. S. 716; *Colton* v. *Colton,* 127 U. S. 300.

*Mr. Assistant Attorney General Nebeker* and *Mr. Leslie C. Garnett* for the United States:

The bill in this case is framed upon the theory that the act of the New Mexico legislature is in contravention of §§ 9 and 10, Art. 21, of the constitution of New Mexico, by which the grant and confirmation of the lands, upon the conditions and limitations prescribed in the Enabling Act, were accepted by the State, and also in conflict with the terms of the Enabling Act, and that the defendant as commissioner of public lands of New Mexico, a public officer of the State charged with the enforcement of its laws, is about to proceed wrongfully and in breach of the trust declared in the Enabling Act and in violation of the laws and rights of the United States. Such a suit cannot be regarded as one against the State. *Ex parte Young,* 209 U. S. 123; *Truax* v. *Raich,* 239 U. S. 33, 37; *Looney* v. *Crane Co.,* 245 U. S. 178, 191; *Cavanaugh* v. *Looney,* 248 U. S. 453, 456.

In the Enabling Act Congress created definite, express, and independent trusts. Each specified quantity of land granted or confirmed was to be devoted to a particular

object, and applying the proceeds from any particular land to any other object than that specified was expressly inhibited as a breach of trust. The Court of Appeals very aptly points out that the granted and confirmed lands aggregate only one twenty-sixth of the area of the State. Manifestly, the remaining twenty-five twenty-sixths of the State and all other public and private property therein are interested in the benefits to be derived from giving publicity to its resources and advantages. It is nowhere shown that any other provision of state law is made to give publicity to the resources and advantages of New Mexico, but the funds derived from these trust lands are made to bear the entire expense of any such publicity for the whole State as the commissioner of public lands of the State may determine is advantageous. This is so palpably a breach of trust as not to require argument.

If these funds can be at all diverted by the state legislature from the objects to which Congress devoted them, there is hardly any limit to which the legislature can not go in order to advertise the State's resources. Congress expressly provided for the necessary advertisement for the sales and leases of the lands, and for the sales of timber thereon, in § 10 of the Enabling Act. This express provision for advertising the sale of these lands negatives the idea of the necessity for any other advertisement.

The act of the state legislature in providing for the diversion of these trust moneys from the fund corresponding to the grant under which the particular land producing such moneys was conveyed or confirmed, and covering them into the general treasury of the State to be expended for the general expenses of the state government, and not investing them in "safe interest-bearing securities," is plainly in conflict with the Enabling Act, constitutes a breach of trust, and is void.

MR. JUSTICE McKENNA delivered the opinion of the court.

Suit to enjoin the expenditure by appellant, Commissioner of Public Lands of the State of New Mexico, of any of the funds derived from the sale and lease of lands granted and confirmed to the State by the act admitting her into the Union. The right to sell or lease is asserted under a certain act of New Mexico entitled "An Act concerning the Publicity and Promotion of Public Resources and Welfare." [Laws 1915, c. 60.]

The Enabling Act was passed June 20, 1910, [c. 310, 36 Stat. 557] and on August 21, 1911, [37 Stat. 39] by a joint resolution of the Senate and House of Representatives New Mexico and Arizona were admitted into the Union upon an equal footing with the original States.

By the Enabling Act certain grants of public lands were made to New Mexico for purposes of which there was a specific enumeration.

It is provided by § 10 of the act that the lands granted and transferred thereby "shall be by the said State held in trust, to be disposed of in whole or in part only in manner as herein provided and for the several objects specified in the respective granting and confirmatory provisions, and that the natural products and money proceeds of any of said lands shall be subject to the same trusts as the lands producing the same."

And it is further provided that the "disposition of any of said lands, or of any money or thing of value directly or indirectly derived therefrom, for any object other than that for which such particular lands, or the lands from which such money or thing of value shall have been derived, were granted or confirmed, or in any manner contrary to the provisions of this Act, shall be deemed a breach of trust."

It is made the duty of the Attorney General of the

United States to prosecute in the name of the United States such proceedings at law or in equity as may be necessary to enforce the provisions of the act "relative to the application and disposition of the said lands and the products thereof and the funds derived therefrom."

The constitutional convention was required to provide, by an ordinance irrevocable without the consent of the United States and the people of the State, that the State and its people consent to the provisions of the act, and the constitution of the State did so provide.

The legislature of the State on March 8, 1915, passed, over the Governor's veto, an act entitled as we have designated, the first section of which is as follows:

"Section 1. It shall be unlawful for the Commissioner of Public Lands to expend for making known the resources and advantages of this State generally and particularly to homeseekers and investors, more than three cents on the dollar of the annual income of his office from sales and leases of lands, but, up to such limit of money annually, he may give or cause to be given publicity to such resources and advantages, and do or cause to be done all incidental work, in his judgment advisable to be done."

The Commissioner receives from sales and leases of the lands granted a large income annually, the income for the year ending December 31, 1914, being approximately $741,000, and he threatens to expend three cents on the dollar of the annual income derived from sales and leases to give publicity to the resources and advantages of the State generally in conformity with the act of the legislature of March 8, 1915, and, unless restrained, will do so.

The answer, though in form a denial of some of the averments of the bill and an admission of others, is really an objection to its sufficiency to authorize the relief prayed, and the ground of objection is that the bill taken as a whole, "is no more than an attempt to interfere with the due administration of a trust estate by the trustee, the

State of New Mexico, which requires the payment of necessary and proper expenses out of the income or proceeds of the trust property, the grantor of the trust, the Government of the United States, having made no other provision for the payment of such necessary and proper costs and expenses; and defendant avers that the expenditure of a small portion of such income and proceeds for the purpose of advertising the resources of the State and the value of its lands, with the hope of thereby increasing the demand for the purchase and leasing of such lands and in the enhancing of the prospective prices to be derived therefrom, is a proper and necessary expense of the administration of said trust estate."

A temporary injunction was applied for and denied and subsequently the case by stipulation was submitted upon bill and answer, upon which it was ordered that the bill be and it was dismissed.

The decree was reversed by the Circuit Court of Appeals and the case remanded with direction to enter a decree for the United States. This appeal was then prosecuted.

The case is not in broad range and does not demand much discussion. There is in the Enabling Act a specific enumeration of the purposes for which the lands were granted and the enumeration is necessarily exclusive of any other purpose. And to make assurance doubly sure it was provided that the natural products and money proceeds of such lands should be subject to the same trusts as the lands producing the same. To preclude any license of construction or liberties of inference it was declared that the disposition of any of the lands or of the money or anything of value directly or indirectly derived therefrom for any object other than the enumerated ones should "be deemed a breach of trust."

The dedication, we repeat, was special and exact, precluding any supplementary or aiding sense, in prophetic realization, it may be, that the State might be tempted

to do that which it has done, lured from patient methods to speculative advertising in the hope of a speedy prosperity.

It must be admitted there was enticement to it and a prospect of realization, and such was the view of the District Court. The court was of opinion that a private proprietor of the lands would without hesitation use their revenues to advertise their advantage and that that which was a wise administration of the property in him could not reach the odious dereliction of a breach of trust in the State.

The phrase, however, means no more in the present case than that the United States, being the grantor of the lands, could impose conditions upon their use, and have the right to exact the performance of the conditions. We need not extend the argument or multiply considerations. The careful opinion of the Circuit Court of Appeals has made it unnecessary. We approve, therefore, its conclusion and affirm its decree.

*Affirmed.*