[No. 3440.   June 27, 1929.]

STATE ex rel. YEO v. ULIBARRI, State Auditor, et al.

[279 Pac. 509.]

M. A. Otero, Jr., Atty. Gen., and J. A. Miller, Asst. Atty. Gen., for appellants.

A. M. Edwards, of Santa Fe, for appellee.

OPINION OF THE COURT

WATSON, J. The judgment appealed from is a peremptory mandamus to the state auditor and the state treasurer, at the suit of the state on the relation of the state engineer, directing those officials to honor certain appropriations made by the last Legislature from the "permanent water reservoirs for irrigation purposes income fund."

Laws 1929, ch. 162, makes an appropriation from said fund

"To make or cause to be made, investigations as to the feasibility of storage reservoirs and canals for the purpose of irrigation and for the reclamation of unproductive lands located in * * * Taos County; * * * to make surveys of the capacities of said reservoirs and of the alignments of said canals and to make borings at the sites for such dams in order to determine the substrata for foundation, cut-off walls and underpinnings therefor, and to make cross-sections, maps and reports thereof on the Red River, in the Rio Grande watershed, at the sites selected by the State Engineer, as may upon investigation and survey, be deemed advisable and feasible."

Laws 1929, ch. 163, is for similar work in the San Juan Basin, except that the storage reservoirs whose feasibility is to be investigated are "for the purpose of flood control and for the reclamation of unproductive lands."

Laws 1929, ch. 39, recites an act of the Seventieth Congress (Public No. 508, 45 Stat. p. 739) which authorizes the Secretary of the Interior "to make all necessary surveys and investigations to ascertain the best methods and means of utilizing the waters of the Gila River and its tributaries above the San Carlos Reservoir for irrigation and other purposes in the states of New Mexico and Arizona," and, also, "to prepare plans and make estimates of the costs of constructing dams, canals, and other works necessary for the utilization of such waterworks," and which appropriates a sum of money to become available for said purposes only if "contributions of equal amount shall have been provided from local sources." The legislative act authorizes the state engineer to contract with the Secretary of the Interior and the state of Arizona on an equal basis "to make surveys and investigations to determine the best methods and means of utilizing water of the Gila River and its tributaries in the state of New Mexico and to investigate and report to the State Engineer thereon," and to make "any other independent investigations deemed necessary by the State Engineer."

Laws 1929, ch. 161, authorizes the state engineer

"To enter into a contract for and on behalf of the State of New Mexico, with the United States Geological Survey, employing such Survey, on the best terms possible, to make a report on the source, amount available and the conservancy of the underground waters in the Mimbres Valley and adjacent areas in Luna County

and Grant County, New Mexico," and provides that "such report may include data now available and data which will be secured by additional investigations and surveys, and said report shall be made to the State Engineer who shall transmit the same to interested parties and who shall publish the same in the Biennial Report of his office."

Laws 1929, ch. 148, authorizes the state engineer

"To enter into a contract for and on behalf of the State of New Mexico, with the United States Geological Survey, employing such survey, on the best terms possible, to make a survey of the underground waters in Lea County, and to investigate and report to the State Engineer, thereon, together with its findings as to the source of and best methods of conservancy of such waters."

■ It is the contention of the Attorney General, appearing for appellant, that these appropriations are in violation of the trust with which the fund in question is impressed. A sufficient statement of the origin and terms of that trust will be found in Asplund v. Hannett, 31 N. M. 641, 249 P. 1074, 58 A. L. R. 573. It will suffice to say here that the purpose expressed is "for the establishment of permanent water reservoirs for irrigating purposes." That the trust is binding and enforceable, and that the Legislature is without power to divert the fund for another purpose than that expressed, is not only made manifest by the language of the Enabling Act, but has been decided by this court, by the United States Circuit Court of Appeals (Eighth Circuit), and by the Supreme Court of the United States. Lake Arthur Drainage Dist. v. Field, 27 N. M. 183, 199 P. 112; Bryant v. Board of Loan Commissioners, 28 N. M. 319, 211 P. 597; U. S. v. Ervien (C. C. A.) 246 F. 277; Ervien v. U. S., 251 U. S. 41, 40 S. Ct. 75, 64 L. Ed. 128.

The Attorney General's argument is outlined as follows:

"I. The 'Water Reservoirs for Irrigation Purposes Income Fund' is a trust fund derived from lands granted to the State of New Mexico by Congress, limited to a specific purpose and can be used legally only for the purposes designated in the act of Congress granting the lands from which the fund is derived."

"II. Permanent Reservoirs for Irrigation Purposes, for the establishment of which the fund was created, are internal improvements and as such must be within the State of New Mexico, of a fixed and permanent nature, designed and intended for the benefit

of the public, and subject to the control of the Legislature of the State."

"III. Appropriations made or attempted to be made by Committee Substitute for House Bill No. 26, by House Bill No. 43, by House Bill No. 68, by House Bill No. 78 and by House Bill No. 72, are for purposes, or in each instance inclusive of purposes other than the purpose and object specified in the granting and confirmatory provisions of the Act of Congress of June 21, 1898, the Act of June 20, 1910, and the Constitution of the State of New Mexico."

In the first proposition we acquiesce as above indicated.

■ The second proposition requires more consideration. Appellant points out that the lands constituting the original corpus of the trust were granted

"In lieu of the grant of land for purposes of internal improvement, made to new states by the Eighth Section of the Act of September fourth, eighteen hundred and forty-one, which section is hereby repealed as to New Mexico, and in lieu of any claim or demand of the state of New Mexico under the act of September twenty-eight, eighteen hundred and fifty, and section twenty-four hundred and twenty-nine of the Revised Statutes, making a grant of swamp and overflowed lands. * * *"

Ferguson Act, § 6 (30 Stat. 485). Numerous decisions are invoked having to do with grants for internal improvements, from which appellant deduces that the reservoir to be established by use of the trust

"Must be (a) in the state of New Mexico, (b) of a fixed and permanent nature, (c) designed and intended for the benefit of the whole public, and (d) subject to the control and regulation of the legislature of the state of New Mexico."

Finally it is said that the rules laid down as to use of funds dedicated to internal imrpovements are

"In harmony with the requirement of article 4, § 31, of the Constitution of New Mexico, which provides that: 'No appropriation shall be made for * * * benevolent purposes to any person, corporation, association, institution or community, not under the absolute control of the state. * * *' And in keeping with article 9, § 14, of the Constitution, which provides that: 'Neither the state, nor * * * shall directly or indirectly lend or pledge its credit, or make any donation to or in aid of any person, association or public or private corporation * * *' "

No reason is suggested, and no authority cited, for the contention that a fund dedicated to the establishment of permanent water reservoirs for irrigation purposes is sub-

ject to all of the restrictions upon a fund dedicated to internal improvements. The fact that Congress, in donating lands to New Mexico for the former purpose, did so "in lieu" of donations made to other states for the latter purpose, does not prove the contention. Congress has not limited the state, as trustee, to any particular scheme of using the fund to establish reservoirs. It has not directed whether funds shall be used to construct, own, and forever operate irrigating works, or to aid and encourage private construction and operation, or to aid and encourage organized quasi public irrigation districts. So far as the use of the fund is limited by the compact between the United States (Congress) and New Mexico (the Constitution), we find no reason for interference by the courts to enforce any particular mode of accomplishing the establishment of reservoirs.

Whether article 9, § 14, and article 4, § 31, of the Constitution, have any application to the use of the trust funds, we shall not consider. The Attorney General has not contended that they have, and the present case may be disposed of without deciding the question.

Coming now to appellants third proposition: Chapters 162, 163 and 39 inform us on their face of the purpose to use the trust fund to investigate the feasibility of dams in the named localities for the storage of waters for irrigation. The necessity of such investigations is obvious. Intrusted with discretion as to where to establish reservoirs, it would seem to be both the right and the duty of the trustees to investigate conditions. That an individual trustee, limited as the state is limited here, would be authorized thus to proceed we cannot doubt. We think that the same principles lead to that conclusion where the state is trustee. U. S. v. Swope (C. C. A.) 16 F. (2d) 215.

Chapters 148 and 161, on their face disclose a purpose merely to investigate underground waters. Except for such implication as results from the use of the word "conservancy," there is no reference to permanent reservoirs, nor to irrigation. Without violating the letter of these acts, the state engineer might perhaps expend the

money without contributing anything to the purpose to which the fund is dedicated. This is one of the more serious objections raised by appellants. Counsel for appellee attempts to meet it by asserting, without argument or proof, that the underground waters of the Mimbres Valley and Lea county are reservoirs. If so, he argues, investigations to determine their capacity, boundaries, sources of supply, and the best means of conserving water within them, are as much to the advantage of the state, as necessary to the proper development and economic use of its natural resources, and as well within the underlying purpose and spirit of the trust as are investigations to determine the proper site and size of a concrete dam.

Without considering whether we might take judicial notice of this fact, as asserted by appellee, we shall, in the present decision decline to admit it, and shall consider, rather, whether we may assume that these acts have for their purpose the discovery of natural underground reservoirs, useful for storage of water for irrigation, which may or may not exist in these regions, and, further, whether the use of the trust fund for such purposes is permissible.

Assuming for the moment that the trust may be so employed, how should the courts regard an act which does not plainly indicate on its face that it will be so employed? We cannot doubt that credit must be given to the honest and lawful purpose of the Legislature, which authorized the expenditure, and of the state engineer, who is to administer it. They stand for co-ordinate branches of the state government, sworn to defend the Constitution and the laws. This is more than mere courtesy. It is a comity essential to the operation of a government with divided powers. We are in effect asked to stop the functioning of other branches of the state government because they have not assured us of absence of purpose to violate fundamental law. We know of no principle authorizing it. Our duty commences when it clearly appears that they have exceeded it; or, in the case of the executive branch, perhaps, that it threatens or intends to exceed it.

There are numerous earlier instances of appropriations from this fund for the investigation of underground waters. In some instances direct and express reference has been made to natural underground reservoirs for irrigation purposes. Sometimes, as in the acts before us, no such reference appears. In one instance (Laws 1925, ch. 127) it was recited that an artesian reservoir was known to exist. The state engineer has in all cases set forth the results of such investigations in his biennial reports. He has apparently made no distinction based upon the inclusion or omission of such references. From the past conduct of the office, as disclosed by official reports, there is no reason to doubt, if it were our duty to question, his appreciation of the legislative purpose, whether expressed or not, to develop the facts concerning underground reservoirs for irrigation.

So we hold that the omission to limit the appropriations in express terms to a strictly lawful purpose is not necessarily fatal to their validity. We assume that the money will be lawfully expended, and recognize no duty or right to interfere until the contrary is made to appear.

This brings us to the fundamental question in the case: May the state use the trust fund in explorations for natural underground reservoirs, storing or capable of storing water for irrigation, to determine their location, boundaries, capacity, sources of supply and replacement, and the best means of conservancy of waters therein?

By chapter 85, Laws of 1913, enacted three years only after the declaration of the trust in express terms, the Legislature so interpreted it as to include such purposes. Numerous acts of succeeding Legislatures have followed that interpretation. The donor has never expressed dissent, and does not now complain.

While the Congress clearly indicated its purpose to aid the territory and the new state to develop irrigation, by furnishing it the means to store water, it placed no restriction on legislative discretion, except to prescribe that the reservoirs should be permanent. Natural underground reservoirs meet this requirement. We do not suppose that

the word "establish" was intended in any narrow sense. It does not necessarily mean "construct" or "erect." To put an existing reservoir in condition to store water, or to, connect it with a water supply, would be "establishing" it, within the meaning of the limitation. Congress has expressed no preference for a surface reservoir as against one underground. If underground waters can,, by pumping or by utilizing artesian pressure, be made to serve the ends of irrigation, as we know to be the fact, we think they come as well within the language of the trust as the waters of surface streams. If it were proposed to construct a huge surface reservoir, to be supplied wholly by pumping from underground sources, we might, under present conditions, doubt the practicability of the scheme; but it would be difficult to show its illegality—the only respect in which we may question it. To discover and make available an underground basin serves the same purpose, is practicable, and is well within the broad meaning of establishment. To explore for such a reservoir is as well within the trust purpose as to explore for available dam sites.

In New Mexico water is of paramount importance as a means of agricultural development. Our water resources are not limited to surface streams. If they were, thousands of acres of rich lands would be condemned to unproductiveness. We have numerous areas, known or believed to be underlaid with important underground reservoirs. This natural endowment, whether surface or underground, is inefficient without artificial measures for conservancy and application. A study. of legislation since statehood, and of the report and recommendations of the several state engineers, discloses the broad policy of using the congressional endowment to promote irrigation by general and widespreal investigation of the possibilities of storing waters artificially, and of utilizing waters stored naturally. Such a policy tends to equalization of benefits, and to uniformity of development. Congress, the donor, did not assume to dictate a policy. It left that to the trustee in order that it might have the elasticity necessary to meet changes of conditions and advances in scientific knowledge. The limitation imposed is funda-

mental and broad. A narrow interpretation of a broad restriction, if proper, would be difficult. There appears no reason to qualify the word "reservoir" by the adjective "artificial," nor to narrow the word "establish" to "erect." That is where strict construction finally arrives. So long as the legislative and administrative policy is within the fundamental purpose and the reasonable meaning of the limitation, it is not for the courts to interfere.

As above pointed out, the donor of the trust is not here objecting, and, so far as we know, never has objected to this policy. But that is not all. In the adoption and execution of it, there has been quite general cooperation with the donor, the federal government, through its Geological Survey. If the policy were clearly illegal, these facts would not save it. But they afford evidence that it is reasonable and in conformity with the donor's interpretation of the compact.

It is not to be supposed that every investigation will lead to the erection of a storage dam, or to the discovery of an underground reservoir. Incidental benefits may result to individuals and to communities, which it was not the purpose of the donor to confer. Appellants urge these facts as fatal to the appropriation. We do not so consider. A trustee, exercising discretion, need not warrant the success of necessary preliminary investigations any more than he need warrant the success of a project actually undertaken; nor may we require a guaranty in either case. Completed irrigation reservoirs bring special benefits to the community in which they are located. That is true of any development scheme. If that fact were to exclude the state from engaging in or aiding a project, it would entirely defeat the trust.

Some of these acts indicate objects other than the establishment of reservoirs for irrigation. For instance, chapter 163 mentions flood control in connection with reclamation. We assume, on the principles already invoked, that these other purposes are merely subordinate and incident to the main and authorized object; and that the state engineer will not fail to interpret the acts in the light of the trust limitation. So long as the authorized

purpose is pursued in good faith, we see no reason why the state should remain blind to incidental benefits and objects.

Counsel have expressed the hope that this court, in deciding the present appeal, may lay down definite rules, for the guidance of Legislatures and administrative officers. It would be impracticable to do so. Each proposed use of the fund must find justification in the particular facts. We cannot, by an advisory opinion, foreshadow our decision in other cases. To what extent, if at all, the fund may be employed in aid of private or quasi public enterprises, cannot be decided until we have a case involving that question. We must stop with holding that the present situation is not one warranting appellants in refusing to make the appropriations available for the several objects for which the Legislature has directed their use.

We find no error in the judgment. It will be affirmed, and the cause will be remanded.

It is so ordered.

BICKLEY, C. J., and PARKER, CATRON, and SIMMS, JJ., concur.