378 P.2d 622

STATE of New Mexico ex rel. INTERSTATE STREAM COMMISSION, Plaintiff-Appellant,

v.

S. E. REYNOLDS, State Engineer, Defendant-Appellee.

No. 7204.

Supreme Court of New Mexico.

Feb. 5, 1963.

 

systems in Guadalupe, San Miguel and Taos Counties.

The appellant sought to enjoin the State Engineer from expending the funds appropriated to him by the Legislature of 1961 and from approving any vouchers for expenditure of such funds on the ground that the appropriations violate the provisions of the Ferguson Act of June 21, 1898, 30 Stat. 484, and the New Mexico Constitution. The trial court determined that the appropriations were constitutional and did not violate either the provisions of the Ferguson Act or the provisions of the New Mexico Constitution.

The Ferguson Act, supra, granted to the territory of New Mexico 500,000 acres of land "For the establishment of permanent water reservoirs for irrigating purposes." It provides that the moneys derived from the trust lands, of which the above are a part, are to be placed to the credit of separate funds created for the respective purposes named in the Act, and shall be used only as the legislative assembly of said territory may direct, and only for the use of the institutions or purposes for which the respective grants of land are made.

Claud S. Mann, Dudley Cornell, Thomas O. Olson, Sp. Asst. Attys. Gen., Albuquerque, for appellant.

Donald A. Martinez, Las Vegas, Charles D. Harris, Roswell, for appellee.

COMPTON, Chief Justice.

This appeal is to determine the constitutionality of Chapters 181, 182 and 183, Laws of New Mexico, 1961, being appropriations "for the purpose of constructing, improving, repairing and protecting from floods the dams, reservoirs, ditches, flumes and appurtenances" of certain named irrigation

By Sections 7–1–16 and 7–1–17, N.M. S.A., 1953 Comp., there were established the Permanent Reservoirs for Irrigation Purposes, *Permanent Fund,* and Permanent Reservoirs for Irrigation Purposes, *Income Fund.* Subsequently, by Section 75–

34-23, N.M.S.A., 1953 Comp. (P.Supp.) there was established the New Mexico Irrigation Works Construction Fund, to consist of the income creditable to the Income Fund above noted and such other monies as may be appropriated thereto by the state legislature.

The appropriations in question were made to the State Engineer from the New Mexico Irrigation Works Construction Fund which the trial court found consists solely at the present time of monies in the said Income Fund accruing from the trust lands set aside by Congress under the Ferguson Act.

It is the contention of appellant (1) that these appropriations are void in that they constitute a breach of the trust imposed by the Ferguson Act as they are for purposes other than those for which the grant was made and for which the fund was created, and (2) that the appropriations violate Article IV, Sections 24, 26 and 31, and Article IX, Section 14 of the New Mexico Constitution for the reason that the legislature of New Mexico is subject to the same constitutional limitations and prohibitions in treating with trust funds from public lands as are imposed upon the legislature by the constitution in making appropriations from state funds.

■ First, appellant asserts that the specifically designated ditch or irrigation systems have no existing reservoirs in connection with their use or operation and,

therefore, argue that the legislation is only intended to provide funds for the construction, improvement, repair and protection from floods of these specific facilities, contrary to the principal purpose of the trust "for the establishment of permanent water reservoirs for irrigation purposes." Thus, it says, the funds appropriated are for maintenance only and the employment of the word "reservoirs" has no real purpose in connection with this legislation. Appellee, on the other hand, urges that all of the named irrigation or ditch systems are on the Pecos River, take their water from it, and each of them has facilities which retard the flow of the stream and raise it thus diverting the water into the ditches of the systems. He contends that any such places of storage or of holding back or collecting of water for diversion comes within the meaning of the word "reservoir."

Thus, we are called upon to determine whether the appropriations in question are within the fundamental purpose and reasonable meaning of the trust grant "for the establishment of permanent water reservoirs for irrigation purposes." We think they are. Irrigating the lands of New Mexico is the prime objective. To this end the establishment of artificial reservoirs and the utilization of water stored naturally is necessary. The grant was not intended to restrict the word "establish" to the construction of reservoirs or to qualify

the word "reservoirs" by the adjective "artificial" as opposed to the utilization of waters stored naturally. We see no reason for distinguishing between waters stored naturally and waters taken directly from their natural source. In this sense we believe a reasonable meaning of the restriction in the grant is that it is to provide funds for the establishment of permanent sources of water for irrigation purposes. Giving the broad interpretation to the limitation that must be given in order to carry out the fundamental purpose of the trust, we hold that the term "establishment" as used in the Ferguson Act includes the permanent regulation of use of water stored naturally or coming directly from natural sources as well as the establishment of other permanent reservoirs.

In State ex rel. Yeo v. Ulibarri, 34 N.M. 184, 279 P. 509, where a breach of the same trust was considered and rejected, this court held that the natural endowment of water in New Mexico, whether surface or underground, is inefficient without artificial measures for its conservancy and application. We said in that case:

"* * * A study of legislation since statehood, and of the reports and recommendations of the several state engineers, discloses the broad policy of using the congressional endowment to promote irrigation by general and widespread investigation of the possibilities of storing waters artificially, *and of utilizing waters stored naturally*. Such a policy tends to equalization of benefits, and to uniformity of development. *Congress, the donor, did not assume to dictate a policy*. It left that to the trustee in order that it might have the elasticity necessary to meet changes of conditions and advances in scientific knowledge. The limitation imposed is fundamental and broad. * * * *So long as the legislative and administrative policy is within the fundamental purpose and the reasonable meaning of the limitation, it is not for the courts to interfere*." (Emphasis ours.)

As we view appellant's position, if the appropriations were for the construction of permanent artificial reservoirs for the storage of large amounts of water to be diverted from the Pécos River and held for use when needed, they would not constitute a violation of the trust. We think it draws too fine a line to say that the trust funds may be used to create artificial reservoirs to store water at, or taken from, its source, whether surface or underground, but that the fund may not be expended to construct, improve or repair existing facilities established to utilize water by diverting it from its natural source. This question also is answered in Yeo v. Ulibarri, supra, where it is said:

"* * * Congress has expressed no preference for a surface reservoir as

against one underground. If underground water can, *by pumping or by utilizing artesian pressure, be made to serve the ends of irrigation, as we know to be the fact, we think they come as well within the language of the trust as the waters of surface streams.* If it were proposed to construct a huge surface reservoir, to be supplied wholly by pumping from underground sources, we might, under present conditions, doubt the practicability of the scheme; but it would be difficult to show its illegality—the only respect in which we may question it. To discover and *make available* an underground basin serves the same purpose, is practicable, and is well within the broad meaning of establishment. * * *" (Emphasis ours.)

The same practical methods of making available the waters of the Pecos River to serve the ends of irrigation apply as well to the utilization of surface waters from their sources and come within the broad meaning of establishment.

■ The Pecos River, as a natural source of water, is being diverted for irrigation purposes by the various irrigation and ditch systems specified, through the use of dams, ditches and flumes. While neither the record nor the briefs indicate the physical characteristics of the systems for which these appropriations are made,

nevertheless, the systems used, viewed from a realistic standpoint, do create reservoirs of water to be used as needed for irrigation purposes. And, since no policy has been dictated by Congress as to the size of a reservoir, or the length of time that water must be stored ·before use, it may be said that any and all parts of an irrigation system which holds or retains water for a longer or shorter period of time creates or acts as a reservoir. Compare State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007.

It is apparent that without the facilities of the irrigation or ditch systems the Pecos River would not constitute an established source of water to be utilized for irrigation purposes. It is also apparent that without maintenance of these facilities by construction, improvement, repair and prevention of damage due to the ravages of nature, permanency could not be assured.

In discussing the constitutionality of the questioned acts, appellant argues that since the trial court concluded that the legislature in appropriating from funds accruing from the administration of the trust lands is subject to the same limitations and prohibitions imposed upon it in making appropriations from state funds, it should have found and concluded that these appropriations violate Article IV, Sections 24, 26 and 31, and Article IX, Section 14.

■ The prohibition in Article IV, Section 24, against the passage of local or

special laws regulating county, precinct and district affairs, claimed to have been violated, has reference to such affairs as concern these localities in their governmental or corporate capacity. Scarbrough v. Wooten, 23 N.M. 616, 170 P. 743. Special laws, such as we have here, for the purpose of carrying out the terms of a trust grant for the "establishment" of reservoirs for irrigation purposes, cannot be said to be an attempt on the part of the legislature to "regulate" the governmental or corporate affairs of the particular irrigation systems. Nor is there anything in them to suggest they would have the effect of changing whatever regulatory powers may now be vested in the county, precinct or district in regard thereto.

It is obvious that in carrying out the purposes of the trust the passage of a general law would be virtually impossible. The establishment of permanent reservoirs, and all of the things included within that purpose, is of necessity restricted to particular areas throughout the state. Since the passage of a general law is clearly inapplicable, these special laws are intended to be and should be considered as a part of the overall plan of the legislature to act, through the proper state official, in connection with irrigation throughout the state, with respect to the purposes of the trust as, when and where the opportunity and needs arise.

■ Article IV, Section 26, forbids the granting to any corporation or person any rights, franchises, privileges, immunities or exemptions which shall not enure equally to all such corporations or persons. The legislation is not intended to grant any corporation or person any of the things prohibited in this section. It should be borne in mind that the appropriations are made to the State Engineer who is the official of the state having general supervision over its public waters, and the funds appropriated to him as such can only be used as directed by the legislature. That the communities in the specified areas will benefit, or that their cooperation is required, is but incidental and subordinate to the main purpose. Again, as stated in Yeo v. Ulibarri, supra:

"\* \* \* Completed irrigation reservoirs bring special benefits to the community in which they are located. That is true of any development scheme. If that fact were to exclude the state from engaging in or aiding a project, it would entirely defeat the trust."

Therefore, such incidental benefits are not sufficient reason to declare the acts unconstitutional. We find no violation of either Section 24 or 26 of Article IV of the New Mexico Constitution.

■ Section 31 of Article IV, prohibits appropriations for charitable, educational

or other benevolent purposes, to any person, corporation, association, institution or community not under the absolute control of the state. These appropriations are not, nor do they appear on their face, to be for charitable, educational or other benevolent purposes. Making permanent water sources available for irrigation purposes throughout the State of New Mexico, is an economic necessity. The fact that non-profit organizations may incidentally benefit from the appropriations made to the State Engineer, who has absolute control of their expenditure, does not put them within the classifications of this section.

Finally, appellant argues that the appropriations are in violation of Article IX, Section 14, of our Constitution which is as follows:

"Neither the state, nor any county, school district, or municipality, *except as otherwise provided in this Constitution,* shall directly or indirectly lend or pledge its credit, or make any *donation* to or in aid of any person, association or public or private corporation, * * *." (Emphasis ours.)

We believe what has been said disposes of this argument. Be that as it may, this section specifically exempts from its limitations the use of the trust funds from the congressional grant as being "otherwise provided for" in the Constitution. The Ferguson Act, supra, which made the grants of lands to New Mexico, specifically provided that the monies derived from the lands were to be placed to the credit of separate funds for the respective purposes set forth in the Act, to be used as the legislative assembly might direct and only for the purposes for which the respective grants were made.

The Enabling Act of June 20, 1910, 36 Stat. 557, under which New Mexico became a state, provided:

"Sec. 10. That it is hereby declared that all lands hereby granted, including those which, having been heretofore granted to the said Territory, are hereby expressly transferred and confirmed to the said State, *shall be by the said State held in trust, to be disposed of in whole or in part only in manner as herein provided and for the several objects specified in the respective granting and confirmatory provisions,* and that the natural products and money proceeds of any of said lands shall be subject to the same trusts as the lands producing the same." (Emphasis ours.)

The New Mexico Constitution, Article XXI, Section 9, provides:

"This state and its people consent to all and singular the provisions of the said act of congress, approved June twentieth, nineteen hundred and ten, concerning the lands by said act grant-

ed or confirmed to this state, the terms and conditions upon which said grants and confirmations were made and the means and manner of enforcing such terms and conditions, all in every respect and particular as in said act provided."

The trust is binding and enforceable and the legislature is without power to divert the fund for another purpose than that expressed. Ervien v. United States, 251 U.S. 41, 40 S.Ct. 75, 64 L.Ed. 128; Yeo v. Ulibarri, supra. Section 10 of the Enabling Act became a part of our fundamental law to the same extent as if it had been directly incorporated into the Constitution when thus expressly consented to by the state and its people in Article XXI, Section 9 of the Constitution. Lake Arthur Drainage Dist. v. Field, 27 N.M. 183, 199 P. 112.

We conclude that the provision of Article XXI, Section 9 is within the proviso of Article IX, Section 14, "except as otherwise provided in this Constitution." Any other result would defeat the trust. It should be noted, in this connection, that none of the cases advanced by appellant to sustain its contentions, involve trust funds.

The judgment should be affirmed. It is so ordered.

CARMODY, CHAVEZ, NOBLE, and MOISE, JJ., concur.