301 P.2d 317

**STATE ex rel. STATE HIGHWAY COMMISSION of New Mexico, Plaintiff-Appellant,**

**v.**

**E. S. WALKER, Commissioner of Public Lands of the State of New Mexico, Defendant-Appellee.**

No. 6081.

Supreme Court of New Mexico.

Sept. 4, 1956.

highways across lands which were granted and confirmed to the State of New Mexico in trust for various state institutions and agencies by the Enabling Act when New Mexico was admitted to statehood, Act of June 20, 1910, 36 Stat. 557; and, if so, then upon what terms and conditions?

2. Must the Commissioner charge for sand and gravel removed from such lands for use solely in constructing public highways across the trust lands? or

3. May the Commissioner grant to the state rights-of-way and easements, as above stated, and permit the described use of sand and gravel taken from lands under his supervision, free of charge?

Before proceeding to the merits of these questions, we take notice of a procedural matter.

This action was instituted below by the state on the relation of the State Highway Commission upon complaint as for a declaratory judgment. After ˙hearing legal argument (there being no factual dispute) the lower court ordered the dismissal of the action for want of jurisdiction upon the basis the Commissioner acted pursuant to the requirements of the Enabling Act and Art. XIII of the New Mexico Constitution in refusing to grant the easements and permission to use the sand and gravel without payment of com‐ pensation therefor, and that the Commis‐ sioner's actions were not ministerial, sub-

John T. Watson, Santa Fe, for appellant.

Richard H. Robinson, Atty. Gen., Santiago E. Campos, Asst. Atty. Gen., Wm. O. Jordan, Sp. Asst. Atty. Gen., for appellee.

McGHEE, Justice.

The questions we will decide on this appeal are:

1. Must the respondent, the Commissioner of Public Lands of New Mexico, charge the State of New Mexico payment for rights-of-way or easements for. state

ject to control by mandamus or by declaratory judgment.

Had the relator been entitled to a free easement and the use of the materials without charge, then it would have been entitled to a peremptory writ of mandamus. This fact has caused us to determine the case on its merits, although the action was brought for a declaratory judgment. It is, therefore, unnecessary to pass upon the question whether under our Declaratory Judgments Act, § 22–6–1 et seq., NMSA, 1953, an action will lie against a state department or official at the suit of another state department or official. In this connection see: Taos County Board of Education v. Sedillo, 1940, 44 N.M. 300, 101 P.2d 1027; and Arnold v. State, 1944, 48 N.M. 596, 154 P.2d 257.

Section 10 of the Enabling Act provides the lands granted and confirmed to the state thereunder shall be administered and the proceeds from the sales thereof, whether of the land itself or its natural products, shall be employed solely for the purpose of the trust imposed—that is, for the benefit of the various state institutions for which the lands were granted. This was pointed out in State ex rel. Shepard v. Mechem, 1952, 56 N.M. 762, 250 P.2d 897, where we held that except for the expense of administering the trust no part of the proceeds therefrom could be diverted to other purposes. In that case an appropriation by the legislature of a part of the fund for general state administrative purposes was held invalid.

Said section of the Enabling Act also provides any sale, lease, conveyance or contract of or concerning any of the lands so granted or confirmed, or the use thereof or the natural products thereof, not made in substantial compliance with the terms of the Enabling Act shall be null and void, notwithstanding any provision of the state constitution or laws to the contrary.

At the first legislative session after statehood, Ch. 82, Laws of 1912 was enacted, governing the handling, sale and disposition of state lands. Among its provisions was § 53, now § 7–8–61, NMSA, 1953, reading:

> "The commissioner may grant rights-of-way and easements over, upon or across state lands for public highways, railroads, tramways, telegraph, telephone and power lines, irrigation works, mining, logging and for other purposes, upon payment by the grantee or grantees of the price fixed by the commissioner, which shall not be less than the minimum price for the lands, used, as fixed by law."

The minimum sale price set by § 10 of the Enabling Act is $5 per acre for lands east of the New Mexico Principal Meridian, and $3 per acre for lands west of it.

A public highway is defined by § 55–1–1, NMSA, 1953, as follows:

"All roads and highways, except private roads, established in pursuance of any law of New Mexico, and roads dedicated to public use, that have not been vacated or abandoned, and such other roads as are recognized and maintained by the corporate authorities of any county in New Mexico, are hereby declared to be public highways."

The foregoing section was in effect when § 7–8–61, supra, was enacted.

The question of the right of the Commissioner to grant rights-of-way for state highways across state lands without receiving consideration therefor has been several times presented to the Office of the Attorney General. In 1922, in Opinion No. 3454, the Attorney General stated such action would not be in violation of the Enabling Act in view of the fact the state was building the highway. In 1931, in Opinion No. 64, the Attorney General stated he doubted it was intended that the state should pay for rights-of-way for highways over state lands and it was a matter resting in the discretion of the Commissioner. This opinion was reaffirmed by the same Attorney General in 1933, in Opinion No. 677.

These opinions would undoubtedly be correct as to lands the state might have acquired absent restrictions, but here we are dealing with lands granted in trust by the United States, under restrictions so exact they permit no license of construction or liberties of inference, as will be shown by quotations from United States v. Ervien, infra. The general law on the subject that an agency of the state is not to be charged for the use of state property unless specific provision be made therefor is not applicable.

Our Enabling Act was brought in dispute in the case of United States v. Ervien, 1917, 246 F. 277, 280, 159 C.C.A. 7, where the Eighth Circuit Court of Appeals struck down a statute enacted by our legislature in 1915 over the veto of the Governor. The statute provided the land commissioner could spend three percent of the proceeds arising from state lands in advertising the resources of New Mexico. The United States brought suit to prevent the diversion of the money and the state contended the advertising would benefit the trust lands by securing settlers and the development of the lands.

(It should be noted, comparatively, that in the instant case claim is made by the relator the building of the highways across the trust lands will greatly benefit them.)

The court, in denying validity to the statute, said such expenditures would be contrary to the terms of the Enabling Act. Near the close of the opinion, with considerable prescience, it is stated:

"* * * It would be but a step further to argue the advantage that would accrue to the trusts from the physical construction of some of the attractive resources of the state that are to be advertised, such as systems of public highways, irrigation, public schools, and the like."

(Although in the present case the relator does not propose that the Commissioner build highways, it does ask that he be compelled to give free rights-of-way for highways and also to donate materials from trust lands for highway construction purposes.)

In 1919 the Ervien case went to the Supreme Court of the United States for review, 251 U.S. 41, 40 S.Ct. 75, 76; 64 L. Ed. 128, and we quote a portion of that opinion:

"* * * There is in the Enabling Act a specific enumeration of the purposes for which the lands were granted and the enumeration is necessarily exclusive of any other purpose. And to make assurance doubly sure it was provided that the natural products and money proceeds of such lands should be subject to the same trust as the lands producing the same. To preclude any license of construction or liberties of inference it was declared that the disposition of any of the lands or of the money or anything of value directly or indirectly derived therefrom for any object other than the enumerated ones should 'be deemed a breach of trust.'

"The dedication, we repeat, was special and exact, precluding any supplementary or aiding sense, in prophetic realization, it may be, that the state might be tempted to do that which it has done, lured from patient methods to speculative advertising in the hope of a speedy prosperity.

"It must be admitted there was enticement to it and a prospect of realization, and such was the view of the District Court. The court was of opinion that a private proprietor of the lands would without hesitation use their revenues to advertise their advantage and that that which was a wise administration of the property in him could not reach the odious dereliction of a breach of trust in the state.

"The phrase, however, means no more in the present case than that the United States, being the grantor of the lands, could impose conditions upon their use, and have the right to exact the performance of the conditions. We need not extend the argument or multiply considerations. The careful opinion of the Circuit Court of Appeals has made it unnecessary.

We approve, therefore, its conclusion and affirm its decree."

Other courts passing upon questions arising under Enabling Acts like ours have declared proposed use of or condemnation of trust lands by public power and irrigation companies without payment of compensation to be foreclosed by the terms of the trust.

In State ex rel. Galen v. District Court, 1910, 42 Mont. 105, 112 P. 706, the court had for determination the question whether lands granted to the state by Enabling Act for the benefit of certain institutions could be condemned for a dam and lake site by a power and irrigation company. A state statute gave the company the right of eminent domain to secure lands belonging to the state not already appropriated to some public use. It was held the method of disposition set forth in the Enabling Act was exclusive and the lands could not be condemned.

Two Nebraska cases have passed upon the question. The first case, State ex rel. Johnson v. Central Nebraska Public Power & Irr. Dist., 1943, 143 Neb. 153, 8 N.W.2d 841, 842, involved a right-of-way for a canal across public school lands for which the power and irrigation company, a public corporation, claimed it could not be compelled to pay compensation. The heart of the decision is stated in paragraphs 8 and 10 of the court syllabi:

"8. The legislature is without power to make a grant in fee of, or an easement over, public school lands without compensation for the damage for such taking or use.

*    *    *    *    *    *

"10. The acts or parts of acts herein in question purporting to grant to public corporations engaged in construction, operation and maintenance of works of internal improvement the right to obtain rights of way over and across public school lands without compensation are declared to be unconstitutional, null and void."

In the second case, State v. Platte Valley Public Power and Irr. Dist., 1943, 143 Neb. 661, 10 N.W.2d 631, the same rule was declared. There the state sued to recover for land taken by the defendant in a condemnation suit without compensating the State of Nebraska for the interest it had in the lands at the time of condemnation as trustee of public school lands and funds. A tract of such land had been sold by the state on contract, but only a portion of the purchase price had been paid. The private purchaser was paid for his equity, but the irrigation district refused to pay the state the balance due it. Again the court held invalid a legislative act granting a public corporation free use of state land and directed judgment in favor of the state for the unpaid part of the purchase price.

The relator places much reliance on the case of Ross v. Trustees of University of Wyoming, 1924, 30 Wyo. 433, 222 P. 3, where the trustees sought to have declared invalid a certificate allowing the use of state land for a right-of-way for a public road. The university trustees claimed the grant could only be made by complying with the terms of the Enabling Act requiring advertisement, etc., and, further, that they, and not the state land board, had the sole right to dispose of the university trust lands.

The land board had granted the right-of-way under a statute giving the board such authority on terms satisfactory to it. No claim appears to have been made that the terms were not satisfactory to the board. The opinion on rehearing, reported at 31 Wyo. 464, 228 P. 642, shows the purpose of the suit was to determine whether the university trustees or the land board had the power of disposition of university grant lands. The court affirmed its former decision and stated it was unfortunate the trustees had seen fit to file the case attacking the grant of the right-of-way in order to get a determination of the question of their right to dispose of the lands.

Relator also relies on the case of State ex rel. Conway v. State Land Department, 1945, 62 Ariz. 248, 156 P.2d 901, which held the highway department could not be compelled to pay lease money for rights-of-way for public roads. This decision relies on Grossetta v. Choate, 1938, 51 Ariz. 248, 75 P.2d 1031, which held the land commissioner could grant a right-of-way for a county road over state school lands, and also upon Ross v. Trustees of University of Wyoming, supra.

Notwithstanding our high regard for the Arizona Supreme Court and its decisions, we feel their cases are based on the strained reasoning and inferences condemned in the opinions in United States v. Ervien, supra.

Further contention is made by the relator that because of the Act of July 26, 1866, 14 Stat. 253, 43 U.S.C.A. § 932, granting free rights for public highways over the public domain, it was not the intent of Congress in the Enabling Act that the state should pay the trust compensation for rights-of-way for state highways. It is suggested, as we understand the argument, that this right survived the grant to New Mexico, at least so long as title to the land is in the state, although no highway existed when the land passed to the state. This argument is directly contrary to the holding in Greiner v. Board of County Com'rs, 1918, 64 Colo. 584, 173 P. 719, involving a school section. It is also contrary to our own decisions in Atchison, T. & S. F. Ry. Co. v. Richter, 1915, 20 N.M. 278, 148 P. 478, L.R.A. 1916F, 969; and Frank A. Hubbell Co. v. Gutierrez, 1933, 37 N.M. 309, 22 P. 2d 225, cases involving lands in private ownership at the time rights-of-way were

claimed under the Act of 1866, although the federal right had not been exercised prior to the time the lands ceased to be a part of the public domain.

Relator strongly asserts the long-continued acceptance of the Opinions of the Attorney General that the Commissioner could grant the highway department free rights-of-way over state lands and free use of road-building material found thereon should not now be disturbed. It also points out to us the fact the Attorney General of the United States, whose duty it is to enforce the trust provisions of the land grant, has never questioned such practice.

■ This practical construction given the Enabling Act by our executive department is very persuasive, and the weight of long administrative construction is well recognized by this Court. Nye v. Board of Com'rs of Eddy County, 1932, 36 N.M. 169, 9 P.2d 1023; Ortega v. Otero, 1944, 48 N.M. 588, 154 P.2d 252; Dillard v. New Mexico State Tax Commission, 1948, 53 N.M. 12, 201 P.2d 345.

■ When, however, we read the restrictive provisions of the Enabling Act which we accepted in our Constitution, the applicable decisions of the courts, state and federal, cited elsewhere in this opinion, our statute § 7-8-61, supra, and the doctrine of Owens v. Swope, 1955, 60 N.M. 71, 86, 287 P.2d 605, we are forced to the conclusion that long administrative interpretation is not sufficient to overcome them and that relator must henceforth compensate the trust for rights-of-way and construction material.

■ A final question remains respecting the manner of disposition of the interests and materials described. Section 10 of the Enabling Act provides that the sale of granted lands and the natural products thereof, as well as leases for more than a certain period, shall be advertised. We agree with the relator that it could not have been in the contemplation of Congress this provision should apply to right-of-way easements for state highways or for the taking of sand and gravel to be used in highway construction upon such lands.

The action of the District Court in dismissing the action will be affirmed for the reasons herein stated.

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and KIKER, JJ., concur.