477 P.2d 301

STATE of New Mexico ex rel., James A. MALONEY, Attorney General, Plaintiff-Appellant,

v.

David R. SIERRA (Substituted for L. A. Mc-Culloch, Jr.), Director, Department of Alcoholic Beverage Control, Defendant-Appellee.

No. 8964.

Supreme Court of New Mexico.

Nov. 23, 1970.

James A. Maloney, Atty. Gen., Richard J. Smith, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Frank P. Dickson, Jr., Albuquerque, for defendant-appellee.

## OPINION

McKENNA, Justice.

The Attorney General filed a declaratory judgment action under our §§ 22–6–1 to 22–6–3, N.M.S.A.1953, against the Director of the Department of Alcoholic Beverage Control. He sought a ruling (1) that ch. 280, Laws 1969, signed by the Governor on April 7, 1969 (§§ 46–10–14.1, 46–10–14.5, N.M.S.A.1953 [1969 Supp.]), is unconstitutional; (2) that ch. 216, Laws 1969, signed by the Governor on April 3, 1969, not codified in our statutes, is the controlling statute and that it permits the sale and consumption of alcoholic liquors by the drink on licensed premises of dispensers on Sundays between the hours of 7:00 a. m. until midnight, and (3) that the defendant Director be enjoined from enforcing ch. 280, supra.

The Director answered praying that the district court declare ch. 280 constitutional, that its enactment repealed ch. 216, and in the event ch. 216 is in effect, it does not permit the sale by drink during the Sunday hours but only the service and consumption thereof in accordance with proposed regulation No. 21 of the Director. This proposed regulation generally dealt with the serving of alcoholic beverages on Sundays in counties not subject to the county option provision of ch. 280, provided such beverages are "pre-sold or granted without cost" on a preceding legal day.

The Intervenors maintain public horse-race tracks in the state and are the owners of liquor licenses. They opposed the position of the Attorney General and claimed that § 2, ch. 280, is constitutional and severable from any unconstitutional portions of ch. 280 and that § 2 permitted them to sell, serve or permit the consumption by the drink on their licensed premises on Sundays during racing season between the hours of 12:00 noon and 11:00 p. m.

The defendant Director filed a counterclaim for a declaratory judgment, asking for a construction of § 7(C), ch. 197, Laws

1969 (§ 46–2–14(C), N.M.S.A.1953 [1969 Supp.]):

"To be effective, any regulation issued by the director shall be reviewed by the attorney general prior to being filed as required by law and the fact of his review shall be indicated thereon."

In his counterclaim the Director said that he submitted his regulations 21, 22 and 25 to the Attorney General who rejected them. He claimed that the Attorney General had no power under § 7 of the Act, supra, to reject his proposed regulations, and that a rejection did not affect their validity or enforceability; but if the Attorney General had power to reject his proposed regulations, the action rejecting the three particular regulations was unlawful, arbitrary, capricious and unreasonable. The Attorney General replied that his rejection of the regulations was valid, and denied any unlawful exercise of his authority.

The issues were submitted to the court on stipulated exhibits. Before proceeding any further, we quote in part the liquor acts involved:

*Chapter 216, Laws of 1969, First Session of Twenty-Ninth Legislature, signed April 3, 1969, not codified.*

"AN ACT
RELATING TO ALCOHOLIC LIQUORS; AND AMENDING SECTION 46–10–14.1 NMSA 1953 (BEING LAWS 1959, CHAPTER 303, SECTION 1) TO PROVIDE FOR THE SERVING OF LIQUOR ON SUNDAY BY DISPENSERS.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF NEW MEXICO:

"Section 1. Section 46–10–14.1 NMSA 1953 (being Laws 1959, Chapter 303, Section 1) is amended to read:

" '46–10–14.1. HOURS AND DAYS OF BUSINESS:—

" 'A. The license of retailers of alcoholic liquors shall allow them to sell and deliver alcoholic liquors, and the licenses of dispensers of alcoholic liquors and club liquor licensees·shall allow them to sell, serve, deliver and permit the consumption·of alcoholic liquors on their licensed premises on Mondays from 7:00 a. m. until midnight, on other weekdays from after midnight of the previous day until 2:00 a. m., then from 7:00 a. m. until midnight, and on Sundays only after midnight of the previous day until 2:00 a. m. The licenses of dispensers of alcoholic liquors shall allow them to serve and permit the consumption of alcoholic liquors on their licensed premises on Sundays from 7:00 a. m. until midnight. * * *

" 'B. It is unlawful for any licensed retailer of alcoholic liquors to sell or deliver alcoholic liquors, or for any licensed dispenser or club to sell, deliver, serve or permit the consumption of alcoholic liquors on their licensed premises during hours other than those prescribed by this section.' "

*Chapter 280, Laws of 1969, First Session of Twenty-Ninth Legislature, signed April 7, 1969 §§ 46–10–14.1, 46–10–14.5, N.M.S.A.1953 (1969 Supp.).*

"AN ACT
RELATING TO ALCOHOLIC LIQUORS; PROVIDING FOR COUNTYWIDE LOCAL OPTION FOR SUNDAY SALES IN CERTAIN COUNTIES; PROVIDING FOR SUNDAY SALES AT CERTAIN RACETRACKS; REPEALING SECTION 46–10–14.1 NMSA 1953 (BEING LAWS 1959, CHAPTER 303, SECTION 1); ENACTING A NEW SECTION 46–10–14.1 NMSA 1953.

"BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF NEW MEXICO:

"Section 1. Section 46–10–14.1 NMSA 1953 (being Laws 1959, Chapter 303, Section 1) is repealed and a new Section 46–10–14.1 NMSA 1953 is enacted to read:

" '46–10–14.1. HOURS AND DAYS OF BUSINESS.—

" 'A. Alcoholic liquors shall be sold, served, delivered or consumed on licensed premises only during the following hours and days specified:

" '(1) on Mondays from 7:00 a. m. until midnight;

" '(2) on other weekdays from after midnight of the previous day until 2:00 a. m., then from 7:00 a. m. until midnight; and

" '(3) on Sundays only after midnight of the previous day until 2:00 a. m. except as provided in Subsection B of this section.

" 'B. Alcoholic liquors by the drink may be sold, served and consumed on licensed premises where the licensee holds a dispenser's license, on Sundays from the hours of 12:00 noon to 11:00 p. m., hereinafter called "Sunday sales."

" 'C. The provisions of Subsection B are not self-executing but shall become effective as follows:

" '(1) the county commissioners of each county having a population over one hundred fifty thousand at the last official federal decennial census and in each county of the first class having more than twenty-seven million dollars ($27,-000,000) in assessed valuation and having a population of not more than sixteen thousand [16,000] and not less than fourteen thousand [14,000] persons according to the 1960 federal decennial census, and in each county of the first class having more than twenty-one million dollars ($21,000,000), but less than twenty-five million dollars ($25,000,000) in assessed valuation and having a population of not more than eight thousand (8,000) and not less than seven thousand (7,000) persons according to the 1960 federal decennial census, shall adopt a resolution submitting to the voters of the county the question of permitting Sunday sales within the county;

" '(2) the question shall be voted upon by the voters of the county at the next succeeding regular or special county-wide election, excepting that the question shall not be put to the voters at the election to select delegates to the state constitutional convention, or the election to approve a new constitution;

" '(3) if a majority of all the voters of the county voting on the question of Sunday sales vote for Sunday sales, Sunday sales shall be legal within the exterior boundaries of that county. If a majority of voters of the county voting on the question do not approve Sunday sales, the question shall not again be submitted by the county commissioners until the expiration of a period of four years from the date of the election.

" 'D. Dispenser, retail and club licensees shall close their places of business during voting hours on the days of the primary election, general election, elections for officers of a municipality and any other election as prescribed by the rules and regulations of the chief of the division of liquor control. Dispenser, retail and club licensees shall also close places of business from 2:00 a. m. on Christmas Day until 7:00 a. m. on the day after Christmas.'

Section 2. SUNDAY SALES AT RACETRACKS—Notwithstanding other provisions of the Liquor Control Act or Section 46–10–14.1 NMSA 1953, or the outcome of any election, it is lawful for the holder of a dispenser's license whose licensed premises are located on a public horse-race track, licensed by the state racing commission, to sell, serve or permit the consumption of alcoholic liquors by the drink on Sunday during the racing season between the hours of 12:00 noon and 11:00 p. m."

■ The district court determined that an actual controversy existed between the parties and that the public interest required a settlement of the controversy. It found that only three counties, Bernalillo, Lincoln and Taos, qualified to conduct a local option election under ch. 280, to decide whether Sunday sales would be permitted. It

found Section 1 of ch. 280, supra, unconstitutional. The specific finding was:

"12. That Section 1, Chapter 280, Laws of 1969, violates Article IV, Section 24, of the New Mexico Constitution. The classification of counties made therein is not based on any substantial distinctions which make the three counties to whom it applies so different from any of the other counties in the state as to require different legislation with respect to them. In addition, the characteristics which form the basis of the classification, to-wit, population and amount of assessed valuation in said counties, are not germane to the sale of alcoholic liquors on Sunday."

As to Chapter 216, the court found:

"16. That Subsection A of Subsection 1, Chapter 216, Laws of 1969, in enacting the provisions for the dispensing of alcoholic liquor on Sundays, omits the word 'sell' and uses the following language:

*'The licenses of the dispensers of alcoholic liquors shall allow them to serve and permit the consumption of alcoholic liquors on their licensed premises on Sundays from 7:00 a. m. until midnight.'* (Emphasis by district court.)

"17. That the legislature knowingly and intentionally omitted the word 'sell' from that portion of the act dealing with the dispensing of alcoholic liquor on Sundays by dispensers.

"18. That no ambiguity is created by the omission of the word 'sell' from the sentence of Subsection A of Section 1 of Chapter 216, Laws of 1969, dealing with dispensing of alcoholic liquors on Sunday.

"19. That the word 'serve' in its ordinary and commonly understood meaning does not also include permission to 'sell.' "

As to the Intervenors, the court determined that Section 2 of ch. 280, supra, was constitutional as containing a reasonable classification and a reasonable exercise of legislative power, and that Section 2 was

severable from the remaining portions of ch. 280.

As to the counterclaim, the judgment was that the Attorney General has power "to review and pass upon regulations issued" by the defendant Director.

Only the Attorney General filed an appeal. He attacks the court's judgment in one respect only, which was that ch. 216, supra, does not permit the sale of alcoholic liquors by the drink on the licensed premises of dispensers on Sundays from 7:00 a. m. until midnight. The Director's answer brief, under Point II, contests the court's judgment on the counterclaim but no appeal or cross-appeal was filed by the Director as required by our Rules 5 and 7 (2) (§ 21–2–1(5), (7) (2), N.M.S.A.1953). Our Rule 17(2) (§ 21–2–1(17) (2), N.M.S.A. 1953) is not applicable. See Frederick v. Younger·Van Lines, 74 N.M. 320, 393 P.2d 438 (1964). Accordingly, the court's judgment on the counterclaim is final.

■ Furthermore, no one contests the judgment of the court in favor of the Intervenors, and its judgment declaring Section 2, ch. 280, supra, as severable and constitutional, is also final.

Before we proceed to the "serve but not sell" question, we have sensed some concern in our Court as to whether the main suit presented proper subject-matter for declaratory judgment relief. While § 22–6–3, N.M.S.A.1953, provides that:

"For the purpose of this act, the state of New Mexico, or any official thereof, may be sued and declaratory judgment entered when the rights, status or other legal relations of the parties call for a construction of the Constitution of the state of New Mexico, or any statute thereof."

there must be an "actual controversy" and an "interested party" petitioning for judgment. § 22–6–1, N.M.S.A.1953. Apparently, the concern is occasioned by the absence of a licensed dispenser as a party.

In State ex rel. Overton v. New Mexico State Tax Comm., 81 N.M. 28, 462 P.2d

613 (1970), Overton, a subordinate county official, received an instruction from his superior, the State Tax Commission, to allow the soldier's exemption against assessed valuation pursuant to an amendment of the basic statute. The county official asked the district court to declare the amendment unconstitutional, stating that a controversy existed between him and the State Tax Commission, which was about to force him to wrongfully apply the exemption, and to prohibit his granting of the exemption to those entitled to it. We held that the county assessor was a subordinate officer subject to direction; that the responsibility for official action was with his superior and, absent "a personal stake" in the outcome of the controversy, he had no standing to sue and no justiciable controversy was presented under § 22–6–1, supra. The nub of the decision is expressed at 462 P.2d 616:

> "The Assessor has no personal stake in the matter. He is under the direction of the State Tax Commission, a superior office. § 72–6–12, N.M.S.A.1953 Comp. The Assessor *has no duty* to protect taxpayers or veterans against wrongful discrimination. * * *" (Emphasis ours.)

█ Our situation is much different. We have here an administrative stalemate between two superior officers detrimental to public interest. The attorney general is charged by statute with the duty of prosecuting in court any action when in his judgment the interest of the State requires such action. § 4–3–2(B), N.M.S.A.1953 (1969 Supp.) He also must represent the State in any appeal. § 4–3–2(A), N.M.S.A. 1953 (1969 Supp.). The defendant is charged with the duty of administering and enforcing the liquor laws. Both parties are superior officers in separate realms and each in his own area is charged with ultimate responsibility for official action. Because of their duties each is an "interested party." Each in the area of public law has a personal stake involved, a required duty and ultimate responsibility, and the "rights, status or other legal rela-

tions of the parties" (§ 22–6–3, N.M.S.A. 1953) not only call for, but the interests of the State and public require that we break the deadlock. In Overton, supra, at 618, we observed that a determination of the necessary personal stake "depends as much on the issues involved as the parties plaintiff, * * *" The element of personal stake, we thought, quoting from Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962), was to assure "[the] concrete adverseness which sharpens the presentation of issues * * *."

The issues before the district court were sharp and opposing. The Attorney General said all of ch. 280 was unconstitutional. The Director said no. The Attorney General construed ch. 216 to permit the sale of alcoholic beverages by the drink on Sundays. The Director rejected this interpretation. Presumably, a licensed dispenser would have taken the position of either the Attorney General or the Director. The deadlock presented is not brought into greater or lesser focus by the presence or absence of a licensed dispenser, nor are the statutory duties, responsibilities and relations of the officers involved intrinsically affected by his absence or presence. A real, actual, concrete controversy exists. Our decision will be productive and meaningful by terminating the controversy. Hence we are not departing from reality, or dispensing advice on assumed hypotheses to unconcerned parties. If all parties held the same viewpoint and merely sought confirmation from us, a different situation would be presented. See State ex rel. Miller v. State Board of Education, 56 Idaho 210, 52 P.2d 141, 143, 144 (1935).

To force the Director to first issue a citation for a violation of his interpretation of ch. 216 would shorten the purpose of the Declaratory Judgment Act and enshrine needless formalism. As Congressman Gilbert stated, at 69 Cong.Rec. 2030 (1928): "Under the present law you take a step in the dark and then turn on the light to see if you stepped into a hole. Under the declaratory judgment law you turn on the light and then take the step." We note

the comment of Justice Sadler in Taos County Board of Education v. Sedillo, 44 N.M. 300, 309, 101 P.2d 1027, 1033 (1940):

"As pointed out by Professor Borchard in his article in 'Current Legal Thought,' there has been a reluctance on the part of some of the courts to apply the new remedy. This results in greatly narrowing the field of its operation."

Professor Jaffe's final thought in his analysis of Standing to Secure Judicial Review: Private Actions, 75 Harvard Law Review 255 (1961), at 305, is that:

"We do not see the public-law function of the courts as simply the rather unfortunate byproduct—or if not unfortunate, at the most the byproduct—of conventional litigation. The jurisdictional criteria evolved by our great judges have been, and should continue to be, predominantly rules of restraint. But these rules seek to define what is justiciable; and it is my thesis that an issue otherwise justiciable under these rules is not ipso facto nonjusticiable because of the lack of a conventional plaintiff."

To force the Director to issue a citation first would require him to take the risk of proceeding in the face of the conflicting opinion of the Attorney General and place the Attorney General in the public dilemma of agreeing with the alleged violator. Such a situation is surely not in the public interest. This dispute has reached the point found necessary by the Supreme Court in Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291, 296 (1952), wherein the Supreme Court said:

"The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."

Other states have seen it as we see it. In McNichols v. City and County of Denver, 101 Colo. 316, 74 P.2d 99 (1937), the plaintiff was the City and County

Auditor who had the duty under the law to protect public funds. He questioned the authority of the City and County of Denver to issue certain bonds and levy taxes for their payment. The purpose of the suit was to secure an "advance" declaration as to the legality of the proposed action. In 74 P.2d, at 102, the court stated that the plaintiff, as auditor, "being a person whose rights and legal relations are affected by the ordinance which authorizes the issuance of these bonds, properly instituted these proceedings." While the court there decided that the judgment would bind the unjoined taxpayers, we cannot say that here for the licensed dispensers, but a declaration by us would not be moot or of no appreciable import or value for it will end the stalemate between the Attorney General and the Liquor Director.

In State ex rel. Sullivan v. Price, 49 Ariz. 19, 63 P.2d 653, 108 A.L.R. 1156 (1937), the Attorney General sought a declaratory judgment as to the validity and constitutionality of a certain provision of the motor vehicle law. The court, at 654, regarded it as a cause of action "so that those whose duty it is under the law to enforce it may quickly know whether they should do so or not, or if the law is defective it may be cured at the coming session of the Legislature."

In Wingate v. Flynn, 139 Misc. 779, 249 N.Y.S. 351, 354, aff'd without opinion in 233 App.Div. 785, 250 N.Y.S. 917, 256 N.Y. 690, 177 N.E. 195, the court stated, at 249 N.Y.S. 354:

"Future confusion and possible litigation will be avoided by a present determination of the question involved. Public officers should have the right to have their legal duties judicially determined. In this way only can the disastrous results of well-intentioned but illegal acts be avoided with certainty."

Ex parte County Board of Education of Montgomery County, Ky., 260 Ky. 246, 84 S.W.2d 59 (1935), presented a situation where the petitioner board members alleged that they were divided in their opinion as to certain questions and asked for a declara-

tion. The questions were whether a prior judgment controlled future action and what was the proper construction of certain statutory sections, and were they constitutional. The court held there was a justiciable controversy.

In Dietz v. Zimmer, 231 Ky. 546, 21 S.W. 2d 999 (1929), the plaintiff residents, taxpayers and electors of the City of Covington petitioned for a declaration that the defendants be declared disqualified as candidates and certain others be adjudged as entitled to take their place. No justiciable controversy was presented for the reason expressed at page 1000:

> "They present no actual justiciable controversy with respect to any rights of theirs, nor have they any duties to perform respecting which the direction of the court is desired or required."

Our case is quite to the contrary; the parties clearly have duties to perform concerning which a justiciable controversy exists and the direction of the district court was required to resolve the controversy.

The answer filed by the Director praying for opposite declaratory relief pinpointed the issues. In Progressive Party v. Flynn, 400 Ill. 102, 79 N.E.2d 516 (1948), the Party sued election officials to determine its right to participate in a primary and the defendants counterclaimed for a determination of the controversy. An actual controversy was found to exist:

> "The counterclaim filed by certain appellees asking for a declaration of rights on the same statute involved in appellant's application is an admission by them that an 'actual controversy' is involved as required * * *."

Town of Ohio v. People, 264 App.Div. 220, 35 N.Y.S.2d 107 (1942), is a case where the plaintiff asked for a judgment declaring that a certain highway was not its responsibility to be kept open and repaired. The town officials were "in a quandary" as to its responsibility having received notification from the State Public Works that, unless repaired, state aid "will be withheld." The defendants questioned that it

was a proper case for declaratory judgment, stating a remedy existed under the statutes to determine the right to state aid. The court declared, at 108, that the suggested remedy was inadequate and decided that a declaratory judgment was both useful and appropriate since the town should *now* have an answer:

> "The objective of a declaratory judgment in our practice is to obtain relief from just such uncertainty or doubt. It aims to enable a party whose rights, privileges and powers are endangered, threatened or placed in uncertainty to invoke the aid of the court to obtain a declaration of his rights or legal relations."

Langer v. State, 69 N.D. 129, 284 N.W. 238 (1939), was an action by the members of the State Budget Board and the defendants were members of various state boards and industrial undertakings carried on by the state. The question in controversy was whether the defendants were required under the statute to furnish a statement of estimated necessary expenditures. The plaintiff said reporting forms were supplied but the defendants had failed to use the forms and submit the information. The defendants said they were not required to do so. Was there a controversy which could be determined under the Declaratory Judgment Act, or was it a request for an advisory opinion or to determine an abstract question?

The court decided that there was a controversy "as to the respective rights and duties of the plaintiffs and the defendants under the law" (284 N.W., at 246), and, further:

> "The reported cases bear ample evidence that public officers and boards frequently have resorted to an action for declaratory relief to obtain determination of a controversy with some other public officer or board, involving questions of official power or duty.

> "In his work on Declaratory Judgments, Professor Borchard says: 'Administrative boards and officials frequently sue each other for a declaration

of their respective rights and duties. It is evident that such officials require only adjudication, not coercion, in order to establish and perform their statutory duties, and that the simplest procedure is the best. Hence, the common use of the declaration in such controversies.' Declaratory Judgments, Borchard, pp. 607, 609."

The suit was dismissed as to some of the defendants because as to them it was merely a request for advice on questions or points of law which may never arise.

In Recall Bennett Committee v. Bennett, 196 Or. 299, 249 P.2d 479 (1952), an election officer cross-complained for a declaration of his duty under the law as to the candidate Bennett. We quote from page 490:

"He is reasonably in doubt as to how he should act. As a public officer he belongs to a class which is peculiarly entitled to judicial guidance, for, as said in Wingate v. Flynn, supra [139 Misc. 779, 249 N.Y.S. 351, 354], 'Public officers should have the right to have their legal duties judicially determined. In this way only can the disastrous results of well-intentioned but illegal acts be avoided with certainty.' As said in Cobb v. Harrington, supra, 144 Tex. 360, 190 S.W.2d 709, 713:

"'* * * the action for declaratory judgment "is an instrumentality to be wielded in the interest of preventative justice and its scope should be kept wide and liberal, and should not be hedged about by technicalities."'"

The Supreme Court of Oregon further observed that the assumption of jurisdiction by the trial court was not mandatory but discretionary and, at 491, "was entitled to consider the bearing of public interest upon the question of assumption of jurisdiction." In our case the trial court specifically found that it was in the public interest to settle the controversy.

State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089 (1936), appears to be to the contrary and we decline to follow it as too narrow

and unrealistic. There the Governor sought a declaration of his power to make interim appointments, which power the Secretary of State denied. The court thought this was merely a difference of opinion since the Governor had not made any appointments—even though the Governor asserted that the Secretary of State's opinion prevented him from filling vacancies. The soundness of this decision has been criticized severely by Professor Borchard in his Declaratory Judgments (2d Ed., 1941), footnote 68, at page 45:

" * * * There was really no convincing reason why this case was held not justiciable, even in the absence of an actual appointment. The Governor claimed the power, the Secretary seriously denied it and *vacancies existed* to which the Governor wished to make prompt appointments. This situation is as ripe for adjudication as are dozens of other cases discussed in the chapter on administrative powers in which public officials contest their respective powers and duties."

In Harriett v. Lusk, 63 N.M. 383, 387, 320 P.2d 738, 741 (1958), we were convinced "that the construction of a statute can be attacked on both formal or substantive grounds by a party with standing to sue," citing Borchard, supra, at 772. We agree with Borchard, at 771, wherein he observes, with approval, that the "party deleteriously affected" as well as "the attorney general on behalf of the public" have been permitted to raise the questions of the constitutionality and construction of a statute. Under our statutes it is the duty of the attorney general to institute any proceedings "in which the state may be a party or interested when, in his judgment, the interest of the state requires such action, * * *." § 4-3-2(B), N.M.S.A.1953 [1969 Supp.]).

We have every reason to believe that our district courts, when exercising their discretion to entertain a request for declaratory relief, will scrutinize each request with utmost caution so as to not convert our

courts into "judicial ponds" to fish for legal advice. Lide v. Mears, 231 N.C. 111, 56 S.E.2d 404, 409 (1949). See Allstate Insurance Co. v. Firemen's Insurance Co., 76 N.M. 430, 415 P.2d 553 (1966).

For the reasons stated, we decide that the district court did not err in entertaining jurisdiction of the dispute presented by the petition and the answer.

■ We can now proceed to the reason for this appeal. Was the district court correct in declaring that Sec. 1 of ch. 216, supra, does not permit the sale of alcoholic liquors by the drink on licensed premises of dispensers on Sundays from 7:00 a. m. until midnight? In its findings, the court said that the word "serve" in its ordinary and commonly understood meaning does not include permission to "sell"; that no ambiguity was created by the omission of the word "sell" from the sentence of subsection A of Section 1, ch. 216, and that the legislature knowingly and intentionally omitted the word "sell."

The district court is correct.

Very recently, in Tafoya v. State Police Board, 81 N.M. 710, 472 P.2d 973 (1970), this Court stated that absent any clear intent expressed to the contrary, words are to have their ordinary and usual meaning. "Serve" means "to wait at table," "to set out portions of food or drinks." Webster's Third New International Dictionary. While distinguishable for reasons not here material, the Supreme Court of Oregon decided that in its ordinarily accepted meaning, the word "serve" is limited and "sell" is not included therein. City of Coos Bay v. Aerie No. 538, 179 Or. 83, 170 P.2d 389, 397 (1946).

If there be doubt, we are permitted to interpret, to arrive at the intention of the legislature, but rules or canons of construction are not to be invoked to arrive at a construction inconsistent with clear intent, as stated by § 1–2–2, N.M.S.A.1953:

"In the construction of constitutional and statutory provisions, the following rules shall be observed unless such construction would be inconsistent with the

manifest intent of the legislature or repugnant to the context of the constitutional provision or statute."

State v. Ortega, 77 N.M. 312, 422 P.2d 353 (1966); Montoya v. McManus, 68 N.M. 381, 388, 362 P.2d 771 (1961).

Even if we assume doubt or ambiguity, it is evident that the legislature in its first sentence in subsection A of section 1 of ch. 216, supra, was aware of the word "sell": " * * * [A]nd the licenses of dispensers of alcoholic liquors and club liquor licenses shall allow them to sell, serve, deliver and permit the consumption * * * on Sundays only after midnight of the previous day until 2:00 a. m." Then follows the sentence of concern, which eliminates the word "sell" and allows serving on Sundays by the drink from 7:00 a. m. until midnight.

■ When the legislature permitted a dispenser to sell by the drink on Sundays, it expressed its intention clearly in ch. 280, supra, in the title: "Sunday Sales"; in subsection B of Section 1: "Alcoholic liquors may be sold, served and consumed * * * on Sundays"; in subsection C, referring to "Sunday sales," and in Section 2 permitting dispensers at public horse-race tracks "to sell, serve or permit the consumption * * * by the drink on Sunday." Even though Section 1 of ch. 280 has been held unconstitutional by the district court, ch. 280 was passed by the same legislature and is in pari materia, Board of Com'rs of Hamilton County v. State, 184 Ind. 418, 111 N.E. 417 (1916); City Transp. Co. v. Pharr, 186 Tenn. 217, 209 S.W.2d 15, 18 (1948): "Conceding the Act * * * to be invalid, it is important as showing legislative intent." See State v. Fidelity & Deposit Co. of Maryland, 36 N.M. 166, at 169, 9 P.2d 700 at 701 (1932), stating, "The two acts * * * are peculiarly in pari materia, having been passed at the same legislative session." State v. Clark, 80 N.M. 340, 342, 455 P.2d 844 (1969); 82 C.J.S. Statutes § 367, at 834: "In construing a particular statute, the court may consider other acts passed

at the same session, although they are unconstitutional or were vetoed."

The Attorney General argues that the word "serve" has acquired a special meaning describing the functions of a tavern-keeper or inn-keeper in providing food or beverage in return for payment, citing support for this special meaning. He states that the legislature is presumed to have employed the word "serve" in that special meaning. He further argues that the word "sell" has no reference whatever to the furnishing of liquor in individual portions, that is, by the drink, and that "sell" refers only to the additional privilege granted a dispenser to "sell and deliver" alcoholic beverages by the bottle or in packages. His conclusion is that the legislature banned dispensers from selling package goods on Sundays but that the dispensers have their added privilege of serving by the drink on Sundays, that is, serving or furnishing in return for payment.

At the outset, just as a matter of practical sense, we have difficulty in assimilating the suggestion that "furnishing in return for payment" means "serve" but not "sell." Be that as it may, the net effect of the Attorney General's argument is that a dispenser does not "sell" when he furnishes for payment alcoholic beverages by the drink for consumption on the premises. This is not what the court decided in People v. Dayton, 18 Mich.App. 313, 171 N.W.2d 57, 58 (1969):

" * * * George Behrens was not a member of the association known as VFW Post 6252, nor had he contributed to the fund from which the post financed the purchase of the liquor. Thus it cannot be said that he enjoyed rights of ownership in the liquor prior to its being served to him. The fact that he paid for the drinks after they were served to him leads one to the conclusion that the transaction was a sale within the meaning of the Liquor Control Act."

Furthermore, our statutory definition of a dispenser does not support the sought distinction for it defines dispenser as any person "selling, offering for sale or having in his possession with intent to sell, alcoholic liquors by the drink or in packages." § 46-1-1, N.M.S.A.1953. Thus a dispenser "sells" by the drink, not just "serves," and "sell" is not limited to liquor in packages.

We cannot overlook the omission of the word "sell" from the act. We cannot attribute any special meaning to "serve" where the entire statutory scheme for liquor control fails to disclose any support for such a special meaning. We cannot depart from giving ordinary words ordinary meaning where there is no evidence of legislative intent to do otherwise. Our analysis is buttressed by ch. 280, for when the legislature desired to permit sales by the drink on Sundays, it did not say only "serve." It used both words, serve and sell.

The Director interprets ch. 216 so as to permit the serving on Sunday of alcoholic liquors if previously purchased. There are some obvious enforcement problems with the Director's interpretation but those problems do not make his interpretation so absurd or unreasonable as to require us to go in the direction urged by the Attorney General.

Our conclusion is that the word "sell" was purposely omitted from ch. 216 to prevent the sale by the drink on Sundays and the district court was right when it did not grant the Attorney General's prayer that ch. 216 "permits the sale and consumption" of alcoholic liquors by the drink on the licensed premises of dispensers of alcoholic liquors on Sundays between 7:00 a. m. until midnight."

■ Like it or not, the purpose of liquor control legislation is to regulate and restrain and not to promote. Application of Bethel Township Veterans Home Ass'n, 180 Pa.Super. 159, 119 A.2d 613 (1956). Our conclusion does not offend that policy. That policy and any loosening of it, is the business of the legislature, not ours.

The judgment is affirmed. It is so ordered.

COMPTON, C. J., and SISK, J., concur.

WATSON, Justice (dissenting).

I respectfully dissent.

Before we can proceed to review the action of the lower court we must assure ourselves that it had jurisdiction to act. The jurisdictional questions are: Can the Attorney General and the Director obtain a declaratory judgment on the question and related subjects from the District Court of Santa Fe County in this action? Can the intervenors? Since the question is jurisdictional it must be raised sua sponte and resolved before we can proceed. Taos County Board of Education v. Sedillo, 44 N.M. 300, 101 P.2d 1027 (1940).

Our declaratory judgment statute, § 22–6–1, N.M.S.A., 1953 Comp., states: "In *cases of actual controversy* the court of record of the state of New Mexico shall have power * * * to declare rights and other legal relations of any *interested party* * * *." (Emphasis added.)

Here the petition filed by the Attorney General states that, in plaintiff's opinion, ch. 280, N.M.S.L.1969, is unconstitutional, but that the defendant Director intends to enforce it, and that, in plaintiff's opinion, ch. 216, N.M.S.L.1969, permits dispensaries to sell alcoholic liquors by the drink on Sundays, but that the defendant may consider this chapter repealed or may interpret it as not permitting such sales. The petition further states that regulations consistent with plaintiff's interpretation have not been adopted by defendant and asks that the court declare in accordance with plaintiff's opinion and restrain and enjoin defendant from enforcing the provisions of ch. 280, supra, against any licensed dispenser in New Mexico. The Director answers the petitioner and asks the court to declare the law to be in accordance with his views. In addition, the Director filed a counterclaim asking the court to interpret ch. 197, § 7(C), N.M.S.L.1969, which requires a "review" by the Attorney General of the Director's regulations. Three race-track corporations intervened, and by answer they asked that § 2 of ch. 280, supra, which permits the sale by the drink on Sundays from noon to 11:00 P.M. at race-tracks during the racing season be declared constitutional.

Two questions are presented. First, are the original parties "interested" so as to make this a "justiciable" controversy? And second, is there a case or actual controversy before the court which would permit it to declare the rights of the race-track corporations, although they did not allege that any of their rights were being threatened. On this subject we quote from Borchard, Declaratory Judgments at 33 (2d Ed.1941):

"Justiciability is the necessary condition of judicial relief. It is that which the term 'case' or 'controversy' is designed to insure, and the Supreme Court has had frequent occasion to consider the matter. So have the courts of foreign countries. What, then, are the 'necessary features' of justiciability? While state courts occasionally assume legislative and executive functions which could not be imposed on federal courts, the power to determine contested rights is a traditional function of all judicial courts in the western world. Expediency and the relative danger of conflict with other departments of the government have induced a refusal to decide major political questions or review mere administrative findings. Expediency and a desire not to function in the abstract, but to decide only concrete contested issues conclusively affecting adversary parties in interest, have induced a refusal to render advisory opinions or decide moot cases. Actions or opinions are denominated 'advisory,' when there is an insufficient interest in the plaintiff or defendant to justify judicial determination, where the judgment sought would not constitute specific relief to a litigant or affect legal relations or where, by reason of inadequacy

of parties defendant, the judgment could not be sufficiently conclusive."

And at page 36:

"The 'necessary features' of justiciability which afford the greatest difficulty in analysis are the requirements of 'interested' parties asserting 'adverse' claims. When has the plaintiff a sufficient 'interest' to warrant judicial protection? When are claims 'adverse'?

"To be 'interested,' some legal relation of the plaintiff must be capable of being affected by the decision; but besides that, the 'interest' must be 'substantial.' Courts differ in their views as to what is 'substantial,' a difference especially notable in actions by taxpayers designed to determine the validity of public action under statute or administrative order. State courts, when they think the public issue important, are disposed to find a taxpayer's interest, however trifling, as adequate to sustain the justiciability of the action. Federal courts are more inclined to scrutinize carefully the nature of the interest of the plaintiff in the public issue presented, and to require *that it be 'substantial' to the plaintiff personally.* The factors giving 'substance' to an interest appear to be the importance of the legal relation, the value of the property, the immediacy of the interest to be affected by the decision. * * *" (Emphasis added.)

See also 6A Moore's Federal Practice, ¶ 57.17 (2d Ed. 1966). As to our requirements for adequacy of a taxpayer's interests, see State ex rel. Overton v. State Tax Commissioners, 80 N.M. 780, 461 P.2d 913 (1969), when public interest requires we exercise our power of superintending control. State ex rel. Castillo Corp. v. New Mexico State Tax Comm., 79 N.M. 357, 443 P.2d 850 (1968).

Here, we do think the Sunday sale of liquor is an issue of public importance, and that the Attorney General and the Director should be commended for their concern over the question. Why shouldn't the court decide it for them in this action? We quote again from Borchard, supra, at 888:

"Administrative authorities find in the declaration a protection against mistaken or illegal conduct and against the resulting penalties and attacks. In general, the traditional law compels an officer to be his own constructionist, and whether he acts, because he assumes he is lawfully authorized thereto, or fails to act, because he assumes he is not, he exposes himself to serious risks in either case, and stakes his security on the accuracy of his guess. This is neither wise nor efficient administration, for the public, for the officer, or for the individual citizen directly affected. While injunction has offered slight relief for these dilemmas, its scope is limited. The declaratory judgment shows the way out. It is hardly possible to measure completely the social advantage accruing from the opportunity to secure a conclusive adjudication upon contested official action before rather than after it is undertaken. *The conditions of justiciability are naturally demanded, to avoid any question of rendering merely advisory opinions.* But the decision when made between the *plaintiff administrative authority,* bringing to issue his or its own power or privilege to act, *and an interested opponent,* serves to clarify the legal position and averts the danger of incurring a criminal penalty, dismissal, or action in tort, and the deleterious public consequences of wrongful official acts." (Emphasis added.)

In the present action, only the intervenors have any interest as to *how* the matter should be decided; the only concern of the plaintiff and the defendant, as public servants, is that the matter be decided. The constitution of a number of states requires or authorizes advisory opinions. The jurisdiction in declaratory judgment actions is consequently broader in those states than it is in New Mexico where advisory opinions are not permitted. Richardson: "Declaratory Judgments and Advisory Opin-

ions as Judicial Legislation," 22 Tenn.L. Rev. 354 (1952).

The question is only one of standing or right to sue as in the Overton cases, State ex rel. Overton v. New Mexico State Tax Com'n, 81 N.M. 28, 462 P.2d 613 (1969), and State ex rel. Overton v. State Tax Comr's, supra, because of the nature of the action here and the lack of an interested party. Either the plaintiff or the defendant would have standing to appear in behalf of the state against an interested opponent. Taos County Board of Education v. Sedillo, supra; Harriett v. Lusk, 63 N.M. 383, 320 P.2d 738 (1958); Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L. Ed.2d 681 (1967); Order of Railway Conductors of America v. Swan, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471 (1947).

Certainly the plaintiff has standing in an action against other departments of the state if their interests would make them adversaries so as to present a real case or an actual controversy. See State ex rel. Yeo v. Ulibarri, 34 N.M. 184, 279 P. 509 (1929), a mandamus action. In State ex rel. State Highway Commission v. Walker, 61 N.M. 374, 301 P.2d 317 (1956), it was decided that a writ of mandamus would lie if the contention of the Highway Department in its action against the Land Commissioner was correct, and there we said:

"* * * This fact [the appropriateness of mandamus] has caused us to determine the case on its merits, although the action was brought for a declaratory judgment. It is, therefore, unnecessary to pass upon the question whether under our Declaratory Judgments Act, § 22–6–1 et seq., NMSA, 1953, an action will lie against a state department or official at the suit of another state department or official. In this connection see: Taos County Board of Education v. Sedillo, 1940, 44 N.M. 300, 101 P.2d 1027; and Arnold v. State, 1944, 48 N.M. 596, 154 P.2d 257." (61 N.M. at 376, 301 P.2d at 318.)

The case before us, however, is similar to State ex rel. La Follette v. Dammann, 220 Wis. 17, 264 N.W. 627, 103 A.L.R. 1089 (1936). There, the Governor sought a declaration of his power to make interim appointments which power the Secretary of State denied. The court thought this was merely a difference of opinion since the Governor had not made any appointments—even though the Governor asserted that the Secretary of State's opinion prevented him from securing suitable persons in filling the vacancies. There, the court said that this difference in opinion is not enough to make a justiciable controversy. The court said further:

"* * * Any declaratory judgment that we might now render would in no real sense be binding either upon those who may hereafter be appointed to office or upon the present occupants thereof. That circumstance alone is sufficient to cause us to refrain from rendering a declaratory judgment at the present time, since the rights of the very persons whose protectible interests are sought to be affected by the requested declaratory judgment would not be prejudiced thereby, section 269.56(11), and the uncertainty or controversy so-called, which gave rise to this proceeding, would not be terminated, section 269.56(6). State ex rel. Mellott v. Board of Com'rs of Wyandotte County, 128 Kan. 516, 279 P. 1; Harrell v. American Home Mortgage Co., 161 Tenn. 646, 32 S.W.2d 1023; Sadler v. Mitchell, 162 Tenn. 363, 367, 36 S.W.2d 891; Miller v. Miller, 149 Tenn. 463, 261 S.W. 965." 264 N.W. at 629, 103 A.L.R. at 1093.

See also United States v. West Virginia, 295 U.S. 463, 55 S.Ct. 789, 79 L.Ed. 1546 (1935), and the cases in the annotation at 103 A.L.R. at page 1094, also the annotation at 149 A.L.R. 349, at 367 and 368.

In State ex rel. Dickson v. Aldridge, 66 N.M. 390, 348 P.2d 1002 (1960), the Attorney General sought to restrain the Chief, Division of Liquor Control, from reclassifying a club license. The holder of the license and the prospective purchaser were permitted to intervene. The "interest" of the Attorney General in the matter was not

questioned, but certainly the "interest" of the intervenor in the matter was substantial and was capable of being affected by the decision. But, in the case before us, the intervenors as well as the principal parties seek only an advisory opinion. The intervenors do not allege that any of their rights are being threatened, nor is there any serious contention made by either the plaintiff or the defendant that § 2 of ch. 280, supra, relating to sales of liquor at the racetracks, is not constitutional as a severable portion of the act so that it would stand even if the rest of the act is unconstitutional.

It is obvious that the intervenors appeared herein simply to avail themselves of the possibility of a precedent being established against their interest and to obtain such assurance as they could against possible future adverse action. Their appearance under these circumstances did not present a justiciable controversy. Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). No injunction was sought against intervenors, and no advisory opinion can be rendered by this court in their behalf. Bell Telephone Laboratories, Inc. v. Bureau of Revenue, 78 N.M. 78, 428 P.2d 617 (1966).

In the case here on appeal there was no licensed distributor before the court below or any other "interested party" sufficient to give it jurisdiction. Its judgment would not even be binding upon the parties hereto if raised in a later action by "interested" persons. As we said in Asplund v. Alarid, 29 N.M. 129, 219 P. 786 (1923), and reiterated in State ex rel. Overton v. New Mexico State Tax Comm., supra:

> "* * * It is not the duty of this or any other court to sit in judgment upon the action of the legislative branch of the government, except when the question is presented by a litigant claiming to be adversely affected by the legislative act on the particular ground complained of."

Believing that the district court had no jurisdiction to decide the matter before it, I would reverse with instructions to dismiss the action.

TACKETT, Justice (dissenting).

The majority opinion holding contrary, I respectfully join Justice Watson in his dissent and add the following.

The paramount question is whether there is here present an actual or justiciable controversy to declare rights and legal relations of any interested party. We do not have an interested party in this action. The authorities on which the majority relies had an interested party.

We should decline to permit our district courts to be converted into "judicial ponds" to fish for legal advice under the guise of a declaratory judgment. Orange Independent School District v. West Orange Independent School District, 390 S.W.2d 81 (Tex.Civ.App.1965). The majority opinion is opening wide the door to allow fishing in judicial ponds for legal advice. This court has repeatedly held it will not render advisory opinions, yet that is exactly what the majority is doing.

There is one additional matter in the majority opinion which troubles me considerably. The majority opinion states:

> "The Director interprets ch. 216 so as to permit the serving on Sunday of alcholic liquors if previously purchased. There are some obvious enforcement problems with the Director's interpretation but those problems do not make his interpretation so absurd or unreasonable as to require us to go in the direction urged by the Attorney General."

The majority holds that "serve" does not include "sell," but customers can drink on Sunday if the liquor was "previously purchased." I feel that such reasoning invites violation of the law. It encourages dishonesty in the sense that it will encourage those who drink on Sunday to actually pay for the liquor consumed on Sunday, while being forced to claim that the liquor consumed was really "previously purchased."

I respectfully dissent.